```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SARENE SERVICES, INC., doing business as
Serene Home Nursing Agency,
                                                              MEMORANDUM & ORDER
                    Plaintiff,                                17-CV-5276 (DRH)(AYS)
        -against-

EMPIRE BLUE CROSS/BLUE SHIELD, an
Anthem Company,

                    Defendant.
--------------------------------------------------------X
```

**APPEARANCES:**

**For Plaintiff:**
THE LAW OFFICES OF IRA C. PODLOFSKY
2956 Route 112
Medford, New York 11763
By:    Ira Podlofsky, Esq.

**For Defendant:**
FOLEY & LARDNER LLP
90 Park Avenue
New York, New York 10016
By:    Rachel E. Kramer, Esq.

**HURLEY, Senior District Judge:**

Plaintiff Sarene Services Inc. ("Plaintiff" of "Sarene") commenced this action in the Supreme Court, Suffolk County, asserting claims for breach of contract, unjust enrichment, and account stated against defendant Empire Blue Cross/Blue Shield ("Defendant" or "Empire"). Defendant thereafter removed the action to this Court asserting jurisdiction exists pursuant to 28 U.S.C. ¶ 1441(b) inasmuch as Plaintiff seeks payment for services allegedly rendered by it to a Medicare patient enrolled in Defendant's Medicare Advantage plans. Presently before the Court

is Defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion is granted.

## BACKGROUND

The following allegations are taken from the Complaint ("Compl.")

Plaintiff is a home nursing agency located in Suffolk County New York. Defendant is "a private insurance company whose business requires it to retain the services of home nursing services to provide high-technology, in-home services to its insureds." (Compl. ¶¶ 1 & 2.) "On October 20, 2015, [P]laintiff received telephone and then fax information from the defendant as to patient RB who was identified as an insured of the [D]efendant who required in-home nursing services." (*Id.* ¶ 4.) That same day, Plaintiff received "Authorization #C03664811" from defendant via facsimile. Said authorization constituted instructions "to begin home nursing services as required." On November 13, 2015 Plaintiff commenced providing home nursing services 24 hours per day, seven days per week to patient RB; the provision of services has continued to date. (*Id.* ¶¶ 6 & 7.) Plaintiff has submitted all required claim forms, supporting documentation and multiple demands for payment to Defendant. Defendants have not made payment and Plaintiff alleges it is owed $3,984,340.96, plus interest, for the services rendered to RB. (*Id.* ¶¶ 8-11.)

The authorization for RB referenced in the complaint has been submitted by the Defendant. The authorization is dated October 20, 2015 and states:

> Thank you for contacting Anthem Blue Cross and Blue Shield (Anthem) Medicare department regarding authorization for: **M**ember name: [Redacted] **Subscriber ID:** [Redacted]
>
> Your request for the following services has been **approved**. Please see the following details:
> **Authorization number:**          C03664811
> **Name of service approved**

| | |
|---|---|
| **(codes/modifiers);** | **G0154** |
| **Units approved:** | **168hrs/672 units** |
| **Dates approved;** | **10/19/2015 to 12/13/2015** |

**You may request an extension or additional units five days prior to the end date of this authorization by faxing supporting documentation of medical necessity to Anthem.**

Thank you for the quality care you provide our members.

**Medicare Precertification Department
Anthem Blue Cross and Blue Shield**

(Ex. 1 to Kramer Declar. (DE 13-3) (emphasis in original).)

According to Defendant, Patient RB was covered under Empire's MediBlue Freedom PPO plan from January 1, 2015 through December 31, 2015, was covered under traditional Medicare from January 1, 2016 through January 31, 2016, and was covered under Empire's MediBlue Plus HMO plan from February 1, 2016 through the present. Copies of the plan summary for Empire's MediBlue Freedom PPO plan and for the Empire's MediBlue Plus HMO plan have been submitted. (Exs. 2 and 3, respectively, to Kramer Declar. (DE 13-4 and 13-5).)[1] The plan documents provide that coverage for home nursing services is limited to "intermittent skilled nursing" services for no more than eight hours per day and 35 hours per week. (Ex. 2 to Kramer Declar. at 50; Ex. 3 to Kramer Declar. at 53-54.)

## DISCUSSION

I.  **Standard of Review**

    A.  **Federal Rule of Civil Procedure 12(b)(1)**

A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it."

---

[1] Affidavits have also been submitted on behalf of both Plaintiff and Defendant. A recitation of their contents is unnecessary at this juncture because they address matters not properly considered on the instant motion to dismiss.

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000). "In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a 'plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists.' " *MacPherson v. State St. Bank & Trust Co.*, 452 F. Supp. 2d 133, 136 (E.D.N.Y. 2006) (quoting *Reserve Solutions Inc. v. Vernaglia*, 438 F. Supp. 2d 280, 286 (S.D.N.Y. 2006)), *aff'd*, 273 F. App'x 61 (2d Cir. 2008); *accord Tomaino v. United States*, 2010 WL 1005896, at *1 (E.D.N.Y. Mar. 16, 2010). "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A.*, 2015 WL 4101839, * 1 (E.D.N.Y. July 8, 2015) (citing *Morrison v. Nat'l Australia Bank, Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)).

    B.    **Federal Rule of Civil Procedure 12(b)(6)**

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a cause of action, a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). The plausibility standard is guided by two principles. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair

understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.' " *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); see *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Leonard F. v. Israel Disc. Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999) (quoting *Allen v. WestPoint–Pepperell*, Inc., 945 F.2d 40, 44 (2d Cir. 1991)); see *Weiss v. Village of Sag Harbor*, 762 F. Supp. 560, 567 (E.D.N.Y. 2011) (in deciding a motion to dismiss a court is entitled to consider, inter alia, "documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference" and "documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint"). "Where a document is not incorporated by reference, the court may never[the]less

consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "This generally occurs when the material considered is a 'contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint.' " *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) (quoting *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006)). In accordance with the foregoing it is appropriate for the Court to consider the authorization attached to Defendant's papers.

## II.     The Position of the Parties

Defendant maintains that although Plaintiff "nominally asserts state law claims," its claims arise under and are preempted by the Medicare Act. As such, the argument continues, this Court lacks jurisdiction because Plaintiff has failed to the exhaust administrative remedies provided under Medicare. It further argues that Plaintiff has failed to state any plausible cause of action because the preauthorization is not a contract and, in any event, neither by its terms nor those of the Medicare Advantage health plan covers 24/7 non-skilled nursing services.

Plaintiff responds that its claims do not arise under the Medicare Act as they do not require any interpretation of that Act. Plaintiff's position is that the authorization was a determination that the services are covered. Moreover, there are no administrative remedies for it to exhaust as such remedies exist when there is a denial of coverage and Defendant preauthorization was a determination that coverage existed. Finally, it argues that it has sufficiently alleged each of the causes in its complaint.

Before addressing the issues raised, it is appropriate for the Court to set forth some background information regarding Medicare Advantage Plans.

### III. Background Information on Medicare Advantage Plans

Medicare benefits may be obtained through Original Medicare or a Medicare Advantage ("MA") Plan. The MA program is set forth in Part C of the Medicare Act. *See* 42 U.S.C. §§ 1395w-21-1395w-29. Under this part, Medicare enrollees may elect to receive their benefits from private insurers, called MA organizations ("MAOs"), rather than the government. MAOs enter into contracts with the Center for Medicare and Medicaid Services ("CMS"), the branch of HHS that administers the Medicare program. Under these contracts, the MAO is paid a fixed amount for each enrollee and the MAO must provide the same benefits and services that the enrollee would receive under traditional Medicare, and may provide more. *See* 42 U.S.C. §1395w-22(a)(1)-(3). *See generally Matthews v. Leavitt*, 452 F.3d 145, 147 n.1 (2d Cir. 2006) (describing the provisions of Medicare Part C). "In exchange, the MAO assumes all of the financial risk for treating that enrollee. If the cost of treatment exceeds the amount the MAO was paid, the federal government is not liable for the cost overruns – the MAO bears the loss." *Tenet Healthsystem GB, Inc. v. Care Improvement Plus South Central Ins. Co.*, 875 F.3d 584 (11th Cir. 2017) (internal citations omitted). The MAO pays third-party providers to treat its enrollees.

> This can be done in one of two ways. One option is for the MAO to enter into an express, written contract with a third-party provider, whereby it agrees to pay certain rates for certain categories of treatments. See 42 U.S.C. § 1395w-25(b)(4). The Medicare Act permits these types of contracts, and provides very few limitations on how they can be drafted. *See, e.g.*, 42 C.F.R. § 422.520(b) (requiring contracts between MAOs and providers to contain a prompt payment provision). The third-party providers that are parties to these agreements are called "contract providers." The second option is for a healthcare provider that is outside of an MAO's network of contract providers to provide treatment to a Medicare Part C enrollee, and then seek reimbursement from the MAO at a later date. These out-of-network providers are called "noncontract providers."

*Tenet Healthsystem*, 875 F.3d at 587-88.

## VI.    The Motion to Dismiss is Granted.

42 U.S.C. §405(h) is made applicable to the Medicare Act by 42 U.S.C. § 1395ii and provides that § 405(g) is the sole avenue for judicial review of all "claims arising under" the Medicare Act. Pursuant to § 405(g) a final decision of the Secretary of Health and Human Services (the "Secretary") may be reviewed by a federal court. A final decision is issued only after a case has proceeded through all the levels of administrative review provided for in each Part of the Medicare Act. *See* 42 C.F.R. §§ 405.701-753, 405-801-405.877, 422.560-422.626. A claim arises under the Medicare Act if (1) "both the standing and the substantive basis for the presentation" of the claim is the Medicare Act, or (2) if the claim is "inextricably intertwined" with a claim for Medicare benefits. *Heckler v. Ringer*, 466 U.S. 602, 606, 623 (1984).

Defendant's preemption argument is based on the following statutory provision adopted in 2003:

> The standards established under this part shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to MA plans which are offered by MA organizations under this part.

42 U.S.C. § 1395w-26(b)(3).[2] According to Defendant, the foregoing section "preempts virtually all state law relating to Medicare Advantage (or 'MA') plans" and as Plaintiff's claims "derive from the patient's membership in the Medicare Advantage plan administered by

---

[2] Prior to 2003, the Medicare preemption provision stated that federal standards would supersede state law and regulations with respect to MA plans to the extent that such law or regulation was "inconsistent" with such standards, and it identified certain standards that were specifically superseded. 42 U.S.C. § 1395w–26(b)(3)(A) (2000), *amended by* 42 U.S.C. § 1395w–26(b)(3) (2003).The legislative history clarifies that the 2003 amendment was intended to increase the scope of preemption, noting that, "the [Medicare Advantage Program] is a federal program operated under Federal rules and that State laws, do not, and should not apply, with the exception of state licensing laws or state laws related to plan solvency." H. Conf. Rep. 108–391 at 557, reprinted in 2003 U.S.C.C.A.N. at 1926.The CMS, however, has explained that regardless of the increased breadth of the preemption provision, preemption "operates only when CMS actually creates standards in the area regulated. To the extent we do not create any standards whatsoever in a particular area, we do not believe preemption would be warranted." Medicare Prescription Drug Benefit, 70 Fed. Reg. 4194–01, 4320 (Jan. 28, 2005).

Empire", they are completely preempted and subject to administrative exhaustion. Def.'s Mem. at 5-6.

As explained by the *Tenet Healthsystem* court:

> As the organizations responsible for administering benefits, MAOs make determinations as to whether a certain type of treatment is covered under the Medicare regulations, and if so at what rate an enrollee may be reimbursed. 42 U.S.C. § 1395w-22(g)(1)(A). When a dispute with an enrollee arises on one of these issues, it is adjudicated according to CMS regulations. The MAO's initial decision regarding coverage is classified as an "organization determination," which the Medicare Act defines as a decision "regarding whether an individual enrolled with the plan of the organization under this part is entitled to receive a health service under this section and the amount (if any) that the individual is required to pay with respect to such service." § 1395w-22(g)(1)(A). Organization determinations also include decisions by an MAO to not cover, reimburse, or provide for a treatment that "the enrollee believes" is covered by Medicare. HHS's regulations define potential parties to an "organization determination" as an "enrollee," the "assignee of an enrollee," the "legal representative of a deceased enrollee's estate," or "[a]ny other provider or entity (other than the MA organization) determined to have an appealable interest in the proceeding." 42 C.F.R. § 422.574.
> If any one of the foregoing parties wishes to challenge any aspect of an organization determination, that party must exhaust its administrative remedies by following a specific procedure for administrative appeal prescribed by the Medicare Act and its implementing regulations. *See* 42 U.S.C. § 1395w–22(g); 42 C.F.R. §§ 422.560–422.622. A party may only bring suit in an Article III court to challenge an organization determination once all of the administrative remedies provided by the Act and its regulations have been exhausted. *See* 42 U.S.C. § 405(g) (authorizing judicial review of "any final decision of the Commissioner of Social Security"); 42 U.S.C. 1395w-22(g)(5) (making 42 U.S.C. § 405(g) applicable to appeals of benefits denials under Medicare Part C); *see also Heckler v. Ringer*, 466 U.S. 602, 617, 104 S. Ct. 2013, 80 L.Ed.2d 622 (1984) (noting that administrative exhaustion is a "prerequisite to jurisdiction" under 42 U.S.C. § 405(g)). This is the sole pathway through which a party can obtain judicial review of any claim "arising under" the Medicare Act. 42 U.S.C. § 405(h); 42 U.S.C. § 1395ii (applying 42 U.S.C. § 405(h) to Medicare Part C); *see also Ringer*, 466 U.S. at 614-15, 104 S. Ct. 2013 (noting that 42 U.S.C. § 405(h) and 42 U.S.C. § 1395ii, provide that § 405(g), "to the exclusion of" Congress's provision for federal question jurisdiction under 28 U.S.C. § 1331, "is the sole avenue for judicial review for all 'claim[s] arising under' the Medicare Act" (alteration in original)).

*Id.* at 586–87 (footnote omitted). It is also noteworthy that the regulations provide that a request for an organization determination can be made by, inter alia, "[a]ny provider that furnishes, or intends to furnish services to the enrollee." 42 C.F.R. § 422.566(c)(1)(ii).

Although the Second Circuit has not addressed preemption and exhaustion under Medicare in a situation similar to the one at hand, i.e. a payment dispute between an MAO and a provider,[3] there are two reported cases from other circuits that provide guidance in this area.

In *RenCare, Ltd v. Humana Health Plan of Texas, Inc.*, 395 F.3d 555 (5th Cir. 2004) an MAO entered into a contract with the plaintiff to provide kidney dialysis services to its enrollees. A dispute arose and the provider sued in state court asserting claims for breach of contract, detrimental reliance and fraud. The case was removed to federal court were the Fifth Circuit found that both the standing and substantive basis for the provider's claims were governed by state law and not the Medicare Act and the claims were "not intertwined, much less 'inextricably intertwined' with a claim for Medicare benefits" but rather claims for payment pursuant to a contract between private parties. *Id*. at 556-559. In making this determination, the court relied in large measure on the risk-shifting distinction between traditional Medicare and Part C Medicare:

> One important difference in the administration of Part C, as opposed to Parts A and B, of the Medicare Act is the financial risk borne by the administering entity. Under Parts A and B, funds from the Federal Supplementary Medical Insurance Trust Fund are paid directly to providers for each qualifying service provided to a beneficiary. See 42 U.S.C. §§ 1395f(b), 1395g(a), 1395l (a). The funds may be paid by intermediaries or carriers contracted by CMS to process claims and disburse federal funds. See 42 U.S.C. §§ 1395h(a), 1395u(a). Under Part C, however, CMS pays [Medicare Choice ("]M+C ["]]organizations fixed monthly payments in advance, regardless of the value of the services actually provided to the M+C beneficiaries. See 42 U.S.C. § 1395w–23(a). In return, the M+C organization assumes responsibility and full financial risk for providing and

---

[3] In *Matthews v. Leavitt*, 452 F.3d 145, 153 n.10 (2d Cir. 2006) the Second circuit held that the statutory provision that an ALJ may adjudicate an enrollee's claim of entitlement to services did not give the ALJ authority to entertain a state law breach of contract claim for damages based on an alleged breach of the covenant of good faith and fair dealing. However, the Court "intimated no view" as to whether an enrollee's claim for common law breach of contract claims for damages "would be cognizable in a suit brought independently of 42 U.S.C. § 405(g)."

> arranging healthcare services for M+C beneficiaries, 42 U.S.C. § 1395w–25(b); 42 C.F.R § 422.100(a), sometimes contracting health care providers to furnish medical services to those beneficiaries, see 42 U.S.C. § 1395w–25(b)(4). Such contracts between M+C organizations and providers are subject to very few restrictions, see, e.g., 42 C.F.R. § 422.520(b) (requiring contracts between M+C organizations and providers to contain a prompt payment provision); generally, the parties may negotiate their own terms. Thus, under Part C, the government transfers the risk of providing care for M+C enrollees to the M+C organization.
>
> Accordingly, Humana bears the ultimate responsibility for providing services to its M+C enrollees. It has chosen to fulfill its obligations by contracting RenCare to provide services to enrollees. With the government's risk extinguished, any dispute over payment to RenCare is solely between RenCare and Humana.

395 F.3d at 558-59.

In *Tenet Healthsystem*, in an opinion authored by Judge Walker of the Second Circuit sitting by designation, the Eleventh Circuit drew a distinction between claims against MAOs by contract as opposed to non-contract providers in examining the question of whether a claim required exhaustion. In that case, eleven hospitals who provided care to Medicare Part C enrollees after being authorized to by the defendant MAO sued the MAO seeking to recover amounts that the MAO had initially paid them but later recouped through offsets. As alleged in the complaint, the provider agreed to provide treatment to certain enrollees covered by the defendant. "Before delivering treatment, the Hospitals contacted [defendant MAO] and received both authorization to provide the service at issue and a guarantee that [defendant] would reimburse the Hospitals. In exchange for [defendant's] guarantees, the Hospitals signed waivers holding the enrollees financially harmless for any costs of care and the delivered the agreed-upon treatment." 875 F.3d at 588 (citations to the record omitted). Years after the hospitals were paid, defendant conducted an audit, determining that the hospitals were overpaid. It then recouped the alleged overpayments through the use of offsets. The hospitals' suit followed. *Id*.

Describing the hospitals as "non-contract" providers, the court agreed with the MAO that the recoupment decision was an organization decision because the regulations define that term to include a dispute regarding coverage between an MAO and the assignee of an enrollee's claim. It reasoned:

> Under CMS's regulations implementing the Medicare Act's administrative review process, 42 C.F.R. § 422.574, the "parties" to an organization determination include "[t]he enrollee" and the enrollee's "assignee." Id. An "assignee" is defined as "a physician or other provider who has furnished a service to the enrollee and formally agrees to waive any right to payment from the enrollee for that service." 42 C.F.R. § 422.574(b). This definition accurately reflects what occurred in the series of transactions leading to the present lawsuit. There was no actual assignment to the hospitals signed by the enrollees, but none is required by 42 C.F.R. § 422.574(b). The Hospitals agreed to treat certain Medicare enrollees, and agreed to hold those enrollees harmless for any costs incurred in connection with their medical treatments, which is all that is required to effect the assignment. In exchange, the Hospitals assumed the enrollees' right to Medicare reimbursement. The Hospitals then attempted to enforce that right to reimbursement against CIP, just as the enrollees would have done had there been no assignment. Under these circumstances, the Hospitals, who stand in the shoes of the enrollees, assert the enrollees' claims and are subject to the Act's exhaustion requirements.

*Id.* at 589.

In reaching this result, the Eleventh Circuit rejected both arguments proffered by the Hospitals as to why they were not assignees. The first argument was that the complaint does not assert rights as assignees but rather claimants under state contract law. The court determined this argument was "meritless" as "the relevant question is not whether the Hospitals define *themselves* as assignees in their complaint, but whether the Medicare Act and its implementing regulations define them as assignees for the purpose of calculating the reimbursement they are entitled to." *Id.* (emphasis in original).With respect to the Hospitals' second argument – that they are not assignees because they are not seeking to recover reimbursement at the rate that the enrollees would have been reimbursed but the higher rate the MAO agreed to pay them – the

court found that the distinction between contract providers and noncontact providers critical as "under the Medicare regulations, noncontract providers cannot charge more than Medicare reimbursement rates, and thus may not assert higher independently contracted rates. *Id*. at 590 (citing 42 C.F.R. § 422.14(a)(1). Citing *RenCare*, the *Tenet Healthsystem* court explained that unlike claims brought by noncontract providers "[a] contract provider's claims are determined entirely by reference to the written contract, not the Medicare Act" as it allow contract providers and MAOs to define the terms of their own agreements without reference to the Medicare regulations. *Id*. at 591.

Here, Sarene, like the hospitals in *Tenet Healthsystem*, is a non-contract provider as its claim is based on the authorization it received from defendant. As such, it stands in the shoes of the enrollee, even absent an assignment, and its claim is subject to Medicare and its implementing regulations.

Sarene argues that exhaustion does not apply because "[t]he issues raised in the complaint do not involve any need to determine whether the treatment provided by Sarene is covered by Medicare or the Defendant's Medicare Advantage plan" as "[t]his determination was already made by the Defendant" when it authorized the services. (Pl.'s Opp. Mem. at 4-5.) The proposition that an authorization constitutes a determination that the services are covered under the terms of the plan of insurance may or may not be true.[4] However, as noted earlier, Medicare regulations define a "organization determination" subject to exhaustion to include "decisions by an MAO to not cover or reimburse" for treatment. *See* 42 C.F.R. § 422.574. The essence of

---

[4] According to the website "healthcare.gov," an authorization means that a medical service, prescription drug, or durable medical equipment is "medically necessary" but "isn't a promise your health insurance or plan will cover the cost." www.healthcare.gov/glossary/preauthorization/ (last visited Jan. 22, 2019); *but cf.* https://www.ama-assn.org/sites/ama-assn.org/files/corp/media-browser/premium/psa/prior-authorization-toolkit_0.pdf (last visited Jan. 22, 2019)("Prior authorization (PA) is any process by which physicians and other health care providers must obtain advance approval from a health plan before a specific procedure, service, device, supply or medication is delivered to the patient to qualify for payment coverage.")

Plaintiff's claims are for reimbursement for the services provided RB. That Plaintiff labels its claims as "breach of contract" and "unjust enrichment" under state law does not change the essence of its claim.

Sarene's argument that even if its claims are subject to exhaustion, there are no administrative remedies to exhaust is similarly unavailing. It ignores that Medicare regulations provide that a request for an organization determination can be made by, inter alia, "[a]ny provider that furnishes, or intends to furnish services to the enrollee." 42 C.F.R. § 422.566(c)(1)(ii). In other words, Sarene as a provider may request an organization determination that its services are covered and thus payment is owing and may challenge that decision as a "provider" with an "appealable interest in the proceeding." 42 C.F.R. § 422.574. Any challenge to any aspect of an organization determination must following the specific procedure for administrative appeal prescribed by the Medicare Act and its implementing regulations. *See* 42 U.S.C. § 1395w–22(g); 42 C.F.R. §§ 422.560–422.622. As Sarene has admittedly not exhausted administrative remedies, Defendant's motion to dismiss is granted.

## CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for failure to exhaust administrative remedies is granted. The Clerk of Court is directed to enter judgment and to close this case.

**SO ORDERED.**

Dated: Central Islip, New York  　　　　　　　　　　  s/ Denis R. Hurley
　　　　January 29, 2019  　　　　　　　　　　　　　Denis R. Hurley
　　　　　　　　　　　　　　　　　　　　　　　　　United States District Judge